UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
KELLY RYDSTROM

         Plaintiff,     **REPORT AND**
 -against-           **RECOMMENDATION**

HOME DEPOT U.S.A., INC. and PECK  16-CV-2833 (SJF)(SIL)
BROTHERS, LLC,

         Defendants.
-----------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

   Plaintiff Kelly Rydstrom ("Plaintiff" or "Rydstrom") initiated this action seeking damages for personal injuries that she allegedly sustained after slipping and falling on a puddle of water while shopping at a retail store owned and operated by Defendant Home Depot U.S.A., Inc. ("Home Depot"). Plaintiff claims that Home Depot along with its contracted roofing maintenance company, Peck Brothers, LLC ("Peck Brothers," together with Home Depot, "Defendants") were negligent in causing her injuries. Defendants each asserted crossclaims against the other for, *inter alia*, contribution and indemnification.

   Presently before the Court, on referral from the Honorable Sandra J. Feuerstein for Report and Recommendation, is Peck Brothers' motion for summary judgment dismissing Plaintiff's claims as against it and Home Depot's crossclaims. *See* DE [57]. For the reasons set forth below, the Court respectfully recommends that the motion be granted in its entirety and that Peck Brothers be dismissed from this action with prejudice.

I.  Background

    A.  **Relevant Factual Background**

The following facts are taken from the parties' pleadings, declarations/affirmations, exhibits, and respective Local Rule 56.1 statements. Unless otherwise noted, these facts are not in dispute.

On January 30, 2016, Plaintiff was shopping with her husband at the Home Depot store located at 10 Gateway Boulevard, Patchogue, New York 11772 (the "Premises") when she slipped and fell on a wet floor. *See* Peck Brothers' Statement of Undisputed Material Facts ("Peck's 56.1 Stmt."), DE [57-3], ¶ 1; Amended Complaint ("AC"), DE [19], ¶¶ 9, 13. Rydstrom was at the Premises looking at paint samples and shopping for a dog kennel. *See* Peck's 56.1 Stmt. ¶¶ 8-9. At the time of her purported fall, Plaintiff was removing a dog crate from a shelf located in the back left, or Northwest, corner of the Premises. *See* Peck's 56.1 Stmt. ¶¶ 10, 11, 22-24; Christopher J. Lanigan Affirmation in Support ("Lanigan Aff."), DE [57-1], Ex. I, Deposition Transcript of Plaintiff ("Plaintiff's Dep."), DE [57-12], at 41:13-18; Ex. J, Deposition Transcript of Derek Wachter ("Wachter Dep."), DE [57-13], at 103:14-18. When Rydstrom first looked at the kennels, she observed a three to five-foot wide puddle in front of the shelves and noticed water dripping from above, which she assumed was coming from the roof. *See* Peck's 56.1 Stmt. ¶¶ 14, 16; Plaintiff's Dep. at 70:3-14, 75:4-12. After Rydstrom looked at the crate offerings, she decided to browse the store further before returning to the Northwest corner of the Premises to retrieve the kennel she ultimately decided to purchase. Peck's 56.1 Stmt. ¶ 19.

2

Plaintiff then reached up to remove the dog crate from the shelf and, after taking the item down, stepped back, slipped in the puddle of water and fell backwards. *See* Peck's 56.1 Stmt. ¶ 23-24.

After being alerted that Rydstrom had fallen, Mr. Wachter, Home Depot's Merchandising Assistant Manager, went to the accident location and remained there for approximately twenty minutes. *See* Peck's 56.1 Stmt. ¶¶ 26, 30. While positioned at the scene of the accident, Mr. Wachter does not recall seeing any water dripping from the roof, nor had he observed any leaks in the two weeks preceding the accident during which period he walked down the relevant aisle more than fifteen times. *See id.* ¶ 27. Moreover, Mr. Wachter was not aware of any complaints concerning water leaking in the fortnight before the incident. *See id.* ¶ 31. Mr. Wachter testified that Home Depot employees walk the aisles daily to assess any issues with the Premises including leaks from the roof and that none were reported on the morning of the incident. *See id.* ¶¶ 33-34; Wachter Dep. at 8-13, 110-111. Clifton Mayers, Home Depot's Assistant Store Manager, also did not observe any water dripping from the roof prior in the three months preceding the incident. *See id.* ¶¶ 45-46.

When Home Depot employees observe problems with the Premises during their daily rounds, they are reported to managers who input the details into a computer program to relay the issue to corporate headquarters so that an appropriate work order can be sent to a vendor. *See id.* ¶ 39. Home Depot contracts with a number of service providers to perform nonroutine store maintenance, such as plumbing, snow removal, and roof upkeep. *See id.* ¶¶ 50-53. With respect to the roof, Home Depot

3

has a contract with Peck Brothers for maintenance services at the Premises pursuant to the terms of their Maintenance Services Agreement. *See* Peck's 56.1 Stmt. ¶ 61; Lanigan Aff., Ex. P, Maintenance Services Agreement, DE [57-20]. When repairs and maintenance are needed on the Premises' roof, Home Depot sends work orders to Peck Brothers specifying the services required. *See id.* ¶ 62. Notably, Peck Brothers is not obligated to inspect the roof, which exceeds 100,000 square feet, for general maintenance needs (such as leaks), and is forbidden from performing any work absent explicit authorization. *See id.* ¶¶ 63-64; Maintenance Services Agreement §§ 1.1-1.2 Lanigan Aff, Ex. L, Deposition of Peck Brothers by John Peck Jr. ("Peck Dep."), DE [57-15] & [57-16], at 39:5-10 (testifying as to size of roof). Peck Brothers does perform a regular drain cleaning program as part of its agreement with Home Depot, which requires it to "ensure that the roof gutters and roof drains are free and clear of debris so water can flow," but does not include an assessment of whether the roof is leaking. *See* Peck's 56.1 Stmt. ¶ 65; Peck Dep. at 38:3-14. If, however, Peck Brothers happens to observe an issue in need of repair, its practice is to alert Home Depot as to its findings and await a further work order if Home Depot wants the matter addressed. *See id.* ¶¶ 65, 82. Peck Brothers does not have authority to resolve issues it spots absent a specific work order. *See id.* ¶¶ 66, 83.

Although in the year, weeks, and days leading up to Plaintiff's fall Peck Brothers performed several tasks on the Premises' roof on an as-ordered basis, the record is devoid of any evidence that Home Depot ever requested a repair for a leak over the area where the incident occurred. For example, on September 21, 2015, Peck

4

Brothers performed its drain cleaning operation. *See* Plaintiff's Statement of Additional Material Facts ("Pltf's 56.1 Stmt."), DE [58-1], ¶ 14. Further, on January 26, 2016, four days before the incident, Peck Brothers performed a "weights and measures" survey, which involved assessing the depth and weight of accumulated snow on the roof following a storm but did not include snow removal. Peck's 56.1 Stmt. ¶¶ 71, 73, 79. Finally, although in the approximately one-year period preceding the accident Home Depot had requested several leaks be repaired, none appear to have been for the Northwest quadrant of the roof. *See* Peck's 56.1 Stmt. ¶ 77; Peck Dep. at 165:12-21 ("from what I have seen in our records, I do not have any knowledge of us fixing or being called in to repair any damage to the roof in the back left corner of the building"); Pltf.'s 56.1 Stmt. ¶¶ 11-12; Declaration of Danielle M. Doman in Opposition to Motion for Summary Judgment ("Doman Decl."), DE [58-3], Ex. 5 (the "Work Orders"), DE [58-4], (showing the locations on the roof where leak repairs were ordered, none of which are argued to be the subject area).

### B. Relevant Procedural History

Based on the above, Plaintiff commenced this action against Home Depot in the Supreme Court of the State of New York, County of Suffolk on February 8, 2016. *See* Complaint, DE [1-1]. The matter was later removed to the United States District Court for the Eastern District of New York on the grounds of diversity jurisdiction. *See* Notice of Removal, DE [1]. Rydstrom subsequently filed the Amended Complaint joining Peck Brothers as a Defendant after learning it was contracted by Home Depot for roof maintenance services. *See* DEs [17], [19]. The Amended Complaint asserts

5

a single cause of action for negligence against Defendants. *See generally* AC. On May 5, 2017, Peck Brothers filed its Answer to the Amended Complaint, which included a crossclaim against Home Depot for contribution and indemnification. *See* DE [27]. On May 10, 2018, Home Depot asserted crossclaims against Peck Brothers for contribution, contractual and common-law indemnification, and failure to name Home Depot as an additional insured on its liability policy (the "Crossclaims"). *See* DE [48].

On August 29, 2018 Peck Brothers filed its motion for summary judgment seeking dismissal of the Amended Complaint as against it along with the Crossclaims. *See* DE [57]. Plaintiff and Home Depot each oppose the motion. *See* Home Depot's Affirmation in Opposition to Motion for Summary Judgement ("Home Depot's Opp."), DE [60]; Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("Pltf.'s Opp."), DE [58].[1] Judge Feuerstein referred the motion to this Court for report and recommendation. *See* September 25, 2018 Order Referring Motion.

## II. Discussion

### A. <u>Legal Standard for Motions for Summary Judgment</u>

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

---

[1] A review of the docket indicates that some of the papers in opposition to the motion were filed incorrectly. Specifically, Home Depot's opposition is filed twice, once styled as its own motion for summary judgment, s*ee* DEs [59], [60], and Plaintiff's opposition is listed as a motion for summary judgment by Home Depot. *See* DE [58]. For the sake of clarity, the Court notes that only one motion is currently pending and respectfully requests that the Clerk of the Court correct the docket accordingly.

6

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). A defendant can demonstrate its entitlement to summary judgment by pointing to an "absence of evidence" supporting the plaintiff's claim. *See Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 399 (E.D.N.Y. 2010) (citing *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party"). Thus, if a defendant has pointed to an absence of evidence, "the burden shifts to the non-moving party to produce evidence raising a material question of fact." *Doona*, 680 F. Supp. 2d at 399 (citing *Miner v. Clinton County,* 541 F.3d 464, 471 (2d Cir.2008)).

Applying these standards, and for the reasons set forth below, the Court respectfully recommends that Peck Brothers' motion for summary judgment be granted in its entirety.

### B.  Plaintiff's Claim Against Peck Brothers

The Court first concludes that Peck Brothers is entitled to summary judgment dismissing Plaintiff's claim against it because it owed her no duty of care as a matter of law.

To establish a claim of negligence in New York, a claimant must prove that: "the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (citing, *inter alia, Solomon v. City of New York,* 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392 (1985). Thus, a threshold question is "whether the alleged tortfeasor owed a duty of care to the injured party." *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 138, 746 N.Y.S. 2d 120, 122 (2002) (internal citations omitted). "[T]he existence and

8

scope of a duty is a question of law." *Id.*; *Connolly v. Chemtreat, Inc*, No. 14-cv-2121, 2016 WL 126379, at *4 (E.D.N.Y. Jan. 11, 2016) ("Whether a duty of care exists is typically a question of law for the court") (internal citations omitted).  "[A] contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party." *Espinal*, 98 N.Y.2d at 138, 746 N.Y.S at 122; *Connolly*, 2016 WL 126379, at *4 ("A contractor does not owe an independent tort duty of care to a non-contracting party") (internal citations omitted).  Under some circumstances, however:

> a party who enters into a contract to render services may be said to have assumed a duty of care – and thus be liable in tort – to third persons: (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, launches a force or instrument of harm; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties; [or] (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely."

*Espinal*, 98 N.Y.2d at 140, 746 N.Y.S at 123 (internal citations omitted).

Here, Rydstrom is not a party to the Maintenance Services Agreement and is thus not owed a duty of care from Peck Brothers unless one of the *Espinal* exceptions applies.  The Court concludes that none do.

### i.   Peck Brothers Did Not Negligently Launch A Force of Instrument of Harm

New York courts have clarified this first exception to emphasize that a duty arises when the defendant, "while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk." *Church ex rel. Smith v. Callanan Indus., Inc.*, 99 N.Y.2d 104, 111, 752 N.Y.S.2d 254, 257 (2002) (citing *Espinal*, 98 N.Y.2d at 139, 746 N.Y.S at 124 ("a defendant who

9

undertakes to render services and then negligently creates or exacerbates a dangerous condition may be liable for any resulting injury"). Thus, Plaintiff argues that there is a factual dispute as to whether Peck Brothers created the purportedly dangerous condition that led to her alleged fall by virtue of having performed some roof maintenance. *See* Pltf.'s Opp. at 4-5. The Court disagrees.

A contractor "does not unleash a force of harm when the purpose of the contractual obligation [it] is undertaking is to mitigate a preexisting risk." *Dillon v. U.S.A.*, No. 10-cv-6112T, 2012 WL 2923357, at *3 (W.D.N.Y. July 18, 2012). In *Church v. Callanan Indus., Inc.*, the court held that no duty existed between the defendant, who was contracted to install a guardrail on the highway, and a plaintiff who was injured along the road where the defendant had failed to install the guardrail. *See* 99 N.Y.2d at 112, 752 N.Y.S.2d at 257. Because the defendant's incomplete performance did not make the condition any *less safe* and, at most, merely failed to make the highway *more safe*, the court found the promisor to be absolved of liability. *See id.* Similarly, here, there is no allegation that Peck Brothers created the purported leak in the roof. Instead, Plaintiff's claim is based on Peck Brothers' alleged failure to adequately repair a pre-existing leak. *See* Pltf.'s Opp. at 4-5. Thus, Peck Brothers did not increase "the risk which existed even before [it] entered into any contractual undertaking." *Church* 99 N.Y. 2d at 112, 752 N.Y.S. 2d at 257.

Moreover, Plaintiff has failed to submit evidence that Peck Brothers ever made repairs on the specific area of the roof in question. In support of its motion, Peck Brothers points to testimony that upon a review of its records it has no knowledge of

10

ever repairing, or being asked to fix, a leak on the back-left corner of the roof. *See* Peck Brothers Reply Affirmation ("Reply Aff.") at ¶ 15; Peck Dep. at 165:12-21. Further, it is undisputed that Peck Brothers does not and cannot perform repairs absent a work order. *See* Peck's 56.1 Stmt. ¶ 63; Pltf.'s 56.1 Response ¶ 63; Home Depot's 56.1 Response ¶ 63. Thus, Peck Brothers has satisfied its initial burden of showing an absence of evidence that it created the dangerous condition. In response, Plaintiff contends that Peck Brothers having received a work order for leaks in other areas of the roof in February 2015, nearly a year before the incident, creates a factual dispute as to whether Peck Brothers is liable. *See* Pltf.'s Opp. at 2-6; Pltf's 56.1 Stmt. ¶ 12 (identifying the leaks that Home Depot ordered repaired). This argument is without merit as Rydstrom does not claim that any of these leaks were in the vicinity of the ~100,000 square foot roof above where she fell. Instead, Plaintiff implies that because Peck Brothers was tasked with repairing some leaks, it bears responsibility for any and all others. As detailed above, however, Peck Brothers' did not have such obligation. *See* Peck's 56.1 Stmt. ¶¶ 62-64. Moreover, Peck Brothers points out that Home Depot also has no record of the roof leaking in the area where Plaintiff fell, *see id.* ¶¶ 31-34, 45-46, and Rydstrom has not rebutted this assertion. Accordingly, Plaintiff has failed to satisfy her evidentiary burden and Peck Brothers is shielded from liability under the first *Espinal* exception.

     ii.  Rydstrom Did Not Detrimentally Rely on
        <u>Peck Brothers' Performance of Contractual Duties</u>

Plaintiff similarly fails to establish a factual dispute as to whether she detrimentally relied on Peck Brothers' roofing maintenance responsibilities. Indeed,

11

in her opposition, Rydstrom concedes by omission that this exception is inapplicable. *See generally* Pltf.'s Opp. Nevertheless, the Court liberally construes Plaintiff's papers and addresses the substance of this *Espinal* exception.

"To establish detrimental reliance on promises contained in a third-party contract, a plaintiff must demonstrate that he or she had knowledge of the contractual obligation on which he or she allegedly relied." *Dillon*, 2012 WL 2923357, at *3 (citing *Occhino v. Citigroup Inc.,* 03-cv-5259, 2005 WL 2076588 (E.D.N.Y. Aug. 26, 2005).

Here, Rydstrom offers no evidence implying that, prior to her alleged injuries, she had any knowledge of Peck Brothers' contractual obligations. In fact, Plaintiff concedes she was unaware of Peck Brothers' roofing responsibilities until discovery was underway. *See* Rydstrom's Letter Motion to Amend Her Complaint, DE [17], ("In [Home Depot's discovery] responses, it was revealed that prior to Plaintiff's accident, [Home Depot] had contracted with Peck Brothers, LLC, for maintenance, inspection and repair of the roof"). Accordingly, the detrimental reliance exception is inapplicable.

### iii.   Peck Brothers Did Not Exclusively Assume Home Depot's Duty to Maintain the Premises

Finally, Rydstrom fails to raise a triable issue of fact as to whether Peck brothers entirely displaced Home Depot's duty to maintain the Premises. "A party to a contact assumes a duty of care to a third party when, pursuant to the contractual agreement, the promisor fully assumes the promisee's responsibilities to safely

maintain the premises." *Connolly*, 2016 WL 126379, at *6 (citing *Espinal*, 98 N.Y.2d at 140, 746 N.Y.S at 123).

Plaintiff claims, without any citation to the record, that Peck Brothers was the only company to complete any repairs on the Premises' roof in the year preceding the accident. *See* Pltf.'s Opp. at 4-5. This argument fails for two reasons. Initially, Peck Brothers argues that other contractors performed various tasks on the roof, *see* Peck's 56.1 Stmt. ¶ 76; *see also* Peck Dep. at 43:10-24, and this fact is undisputed by Plaintiff. *See* Pltf.'s 56.1 Response ¶ 76. Even if the Court accepts Rydstrom's argument on its face, it is insufficient to invoke this exception because Plaintiff does not contend that Peck Brothers was the only one in charge of maintaining the *entire Premises*. Indeed, Home Depot uses a litany of vendors to perform various maintenance roles within the Premises. *See* Peck's 56.1 Stmt. ¶¶ 51-54. Moreover, Home Depot itself plays a role both in generally maintaining the Premises, *see* Wachter Dep. at 46:10-49:13 (testifying that employees are responsible routine maintenance such as mopping a wet floor), and in working with Peck Brothers to keep the roof in a safe condition. Specifically, as detailed above, Peck Brothers is not permitted to perform any work without Home Depot's preauthorization, *see* Peck's 56.1 Stmt. ¶¶ 63-64, demonstrating Home Depot retained the obligation to inspect the roof and alert Peck Brothers when action was needed. Accordingly, Peck Brothers did not exclusively maintain the Premises, rendering the third *Espinal* exception inapplicable as a matter of law.

Because Rydstrom has failed to adduce evidence establishing that one of the *Espinal* exceptions gives rise to a duty of care, the Court respectfully recommends granting Peck Brothers' motion for summary judgment dismissing Plaintiff's claims against it.

### C.     Home Depot's Crossclaims Against Peck Brothers

The Court next concludes that Home Depot's Crossclaims fail as a matter of law for many of the same reasons Plaintiff's claims should be dismissed. Specifically, the absence of evidence that Home Depot ever submitted a work order requesting that Peck Brothers repair a leak in the area of the roof in question, coupled with the lack of an affirmative obligation to inspect the roof for leaks, renders Home Depot's Crossclaims fatally flawed. Home Depot asserts four Crossclaims under theories of: (i) contribution; (ii) common-law indemnification; (iii) contractual indemnification; and (iv) failure to name Home Depot as an additional insured. *See* Crossclaims. In support of its motion, Peck Brothers argues it is entitled to judgment as a matter of law under each claim. *See generally* Peck Brothers' Memorandum of Law in Support of Summary Judgment ("Peck Mem"). DE [57-2]. In response, Home Depot makes no meaningful attempt to rebut any of Peck Brothers' assertions. *See generally* Home Depot's Opp. Instead, Home Depot puts forward two irrelevant arguments in an apparent attempt to establish a blanket factual dispute. *See id.* The Court addresses each Crossclaim in turn before discussing its disagreement with Home Depot's holistic position.

      i.      Contribution

The doctrine of contribution enables damages to be "distributed among tortfeasors by requiring joint tortfeasors to pay a proportionate share of the loss." *Firestone v. Berrios*, 42 F. Supp. 3d 403, 419 (E.D.N.Y. 2013) (quoting *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 853 (1985)). To establish a right to contribution in New York between parties in privity, a third-party plaintiff must demonstrate that a third-party defendant "owed it a duty of reasonable care independent of its contractual obligations, or that a duty was owed to the plaintiff[] as [an] injured part[y] and that a breach of this duty contributed to the alleged injuries." *Baratta v. Home Depot USA, Inc.*, 303 A.D.2d 434, 435, 756 N.Y.S.2d 605, 607 (2d Dep't 2003) (citing *Phillips v. Young Men's Christian Ass'n*, 215 A.D.2d 825, 827, 625 N.Y.S.2d 752, 754 (3d Dep't 1995)); *see also Roach v. AVR Realty Co., LLC*, 41 A.D.3d 821, 824, 839 N.Y.S.2d 173, 176 (2d Dep't 2007) (contractor entitled to summary judgment absent evidence it "owed [the third-party plaintiff] a duty of reasonable care independent of its contractual obligations, or that [it] owed a duty of reasonable care to the injured plaintiff") (internal citations omitted). Here, as detailed above, Peck Brothers owed no duty to Rydstrom. *See* Section II(B), *supra*. Moreover, Home Depot does not allege or present evidence of any duty owed to it by Peck Brothers independent of the Maintenance Services Agreement. Accordingly, Home Depot has failed to raise a triable issue of fact as to whether any potential damages awarded to Plaintiff should be apportioned between the Defendants and contribution is inappropriate.

15

### ii.     Common-Law Indemnification

A claim for common-law indemnification lies if a third-party plaintiff demonstrates that an injured party's damages are attributable solely to the negligence or nonperformance of an act entirely within the province of a third-party defendant. *See Jaikran v. Shoppers Jamaica, LLC*, 85 A.D.3d 864, 866, 925 N.Y.S.2d 596, 599 (2d Dep't 2011); *see also Roach*, 41 A.D.3d at 824, 839 N.Y.S.2d at 176 (contractor entitled to summary judgment dismissing crossclaim for common-law indemnification when "the injured plaintiff's accident was not solely due to its negligent performance or nonperformance of an act solely within its province"). Here, as discussed above, Peck Brothers is not entirely responsible for maintenance of the Premises or even just the roof. *See* Section II(B)(iii). Indeed, Home Depot works in tandem with Peck Brothers to keep the roof in a safe state by virtue of having to submit work orders for any issue in need of repair. *See* Peck's 56.1 Stmt. ¶¶ 62-64. Thus, Home Depot's Crossclaim for common-law indemnification fails as a matter of law.

### iii.    Contractual Indemnification

With respect to Home Depot's claim for contractual indemnification, the Maintenance Services Agreement provides in relevant part that Peck Brothers shall

> indemnify, defend, and hold harmless Home Depot … from and against any and all claims … arising out of or related to (a) the death or injury to any person … which resulted … from any acts or omissions of [Peck Brothers] … in performing [under the contract] …; or (h) [Peck Brothers'] negligence or willful misconduct.

Maintenance Service Agreement at § 6.1.

16

Here, Peck Brothers has no record of ever repairing, or being asked to fix, a leak on the Northwest quadrant of the roof. *See* Peck's 56.1 Stmt. ¶ 77. Home Depot concedes this assertion, *see* Home Depot's 56.1 Response ¶ 77, and fails to put forward any evidence that might undermine Peck Brothers' recollection. Accordingly, it is undisputed that Rydstrom's injuries did not arise from any "act or omission" by Peck Brothers, rendering Home Depot's contractual indemnification claim unviable as a matter of law.

### iv. Failure to Name Home Depot as an Additional Insured

Finally, Home Depot's claim that Peck Brothers failed to name it as an additional insured on its liability policy fails as well. In support of its motion, Peck Brothers identified testimony stating Home Depot was listed as an additional insured on its policy. *See* Peck Mem. at 15; Peck Dep. at 148:14-17. In opposition, Home Depot presents no evidence to the contrary, nor does it dispute Peck Brothers' assertion. Accordingly, Peck Brothers is similarly entitled to summary judgment dismissing this cause of action.

### v. Home Depot's Remaining Arguments

In opposition to the motion, Home Depot fails to address a single substantive argument raised by Peck Brothers, and instead makes two blanket arguments in an apparent attempt to concoct a factual dispute. First, Home Depot contends that summary judgment is inappropriate because uncertainty remains as to whether Plaintiff's fall was indeed caused by water leaking from the roof. *See* Home Depot Opp. ¶¶ 4, 8. Next, Home Depot contends that Peck Brothers' purported failure to

17

alert Home Depot of any leak in the area in question, despite having been on the roof four days before the incident, renders it liable. *See id.* ¶¶ 9-13. Both arguments miss the mark.

With respect to whether a factual dispute as to causation precludes summary judgment, Home Depot's contention is a red herring at best. Regardless of whether there remains a question of fact as to the existence of a roof leak causing to Rydstrom's fall, the resolution of that issue has no bearing on the Crossclaims. As discussed repeatedly above, Peck Brothers was neither authorized nor expected to repair leaks absent a work order from Home Depot and has no record of ever repairing, or being asked to fix, the area of the roof in question. *See* Peck 56.1 Stmt. ¶¶ 63, 77; Peck Dep. 41:12-23, 165:12-21; *see also* Maintenance Services Agreement at §§ 1.1-1.2. Home Depot admits that Peck Brothers was only required to perform maintenance on an as-requested basis and presents no evidence that it sent a work order to repair leaks in the vicinity of where the incident occurred. *See* Home Depot's 56.1 Response ¶¶ 63, 77. Absent such evidence, the presence or lack thereof of a leak is irrelevant to Peck Brothers' liability to Home Depot. Accordingly, the purported factual dispute raised by Home Depot is irrelevant.

Similarly, Home Depot's argument that Peck Brothers' failure to identify the leak despite "being in the best position to determine if the roof needed repairs" is without merit. *See* Home Depot's Opp. ¶ 12. Again, Home Depot concedes that Peck Brothers had no obligation under the Maintenance Services Agreement to inspect the roof for leaks. *See* Home Depot's 56.1 Response ¶¶ 64-65. Instead, Peck Brothers

18

was only contracted to perform upon receiving explicit work orders, rendering any issue of who was in a "better position" to inspect the roof extraneous. Home Depot's contention that Peck Brothers could be found liable by failing to report any leaks despite having conducted a weights and measures survey four days before the incident and a drain/gutter cleaning a few months earlier – both tasks that have nothing to do with repairing leaks – represents an untenable leap that is unsupported by the evidence. Accordingly, Home Depot has failed to raise any triable issues of material fact and the Court respectfully recommends granting Peck Brothers' motion for summary judgment dismissing the Crossclaims.

### III. Conclusion

For the reasons set forth above, the Court, having found no genuinely disputed issues of material fact, recommends granting Peck Brothers' Motion for Summary Judgment in its entirety and dismissing the Amended Complaint and Crossclaims as to Peck Brothers with prejudice.

### IV. Objections

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at \*2 (2d Cir. Nov. 20, 2008);

19

*Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
         January 7, 2019                    /s/ Steven I. Locke
                                            STEVEN I. LOCKE
                                            United States Magistrate Judge